**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HENRYK OLEKSY**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 1245 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| **GENERAL ELECTRIC CO.**, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Henryk Oleksy's ("Oleksy") Renewed Motion to Compel and Motion to Compel Litigation Hold Documents from Defendant General Electric Co. ("GE"). Oleksy seeks to compel three types of discovery from GE: (1) documents responsive to his Request for Production No. 30; (2) the deposition of a document collection witness; and, (3) information relating to GE's document hold practices. The first two elements were resolved in the hearing on Oleksy's motion, and only the litigation hold issue remains before the Court. The parties agree that GE discovered at some point in April, 2011 that a data purge had taken place in 2009 at GE's Bangor, Maine facility. Oleksy contends that GE's actions constitute the spoliation of relevant evidence and asks the Court to require GE to produce copies of its document retention policies, the litigation hold letters issued in this case, documents relevant to the steps GE took to institute the hold, and a description of all purged data relevant to Oleksy's claims. For the reasons discussed below, the motion is granted on the litigation hold issue.

## I. Background

From 1989 through 2000, Oleksy worked at the Preferred Machine and Tools Products Corporation in Bedford Park, Illinois. Preferred was eventually acquired by a subsidiary of GE following a series of acquisitions and stock transfers. As described in detail by the District Judge's denial of GE's motion for summary judgment, Oleksy developed a computer-controlled process for improving the manufacture of steam turbine blades at the Bedford Park plant. United States Patent No. 6,449,529 B1 ("the '529 patent") covering Oleksy's method was issued to him on September 10, 2002. On March 8, 2006, Oleksy filed this action pursuant to 35 U.S.C. §§ 271 & 281, claiming that GE infringed the '529 patent. GE subsequently filed a counterclaim seeking declaratory judgment that the '529 patent claims are invalid, that no infringement occurred, and that Oleksy breached a contractual agreement assigning the '529 patent to GE. On May 23, 2011, the District Judge denied GE's motion for summary judgment, finding that Oleksy had not contractually assigned his rights to the '529 patent to GE and that GE had no "shop right" in the patent's invention.

As the summary judgment matter was proceeding before Judge Gettleman, the parties were also engaged in a discovery dispute before this Court. The Court granted Oleksy's motion to compel the production of documents related to his damages but continued the motion concerning the production of data related to GE's machine methods. GE had recently given Oleksy several hundred thousand documents responsive to his request, and Oleksy sought additional time to review them. Following a hearing on April 15, 2011, Oleksy withdrew his motion without prejudice.

On April 12, however, GE sent a letter to Judge Gettleman advising him that GE had discovered that the terms of a litigation hold that was issued when this suit was filed had not been fully honored. According to GE, information concerning the time and labor costs associated with work at its Bangor, Maine facility are stored and managed in a database in Alpharetta, Georgia. When data threatens to exceed capacity, data is removed from the Alpharetta database. This ordinarily includes data more than one year old that does not otherwise appear in GE's open inventory lots. The data purge eliminated 498 "buckets" – a term GE uses to describe orders for air foil turbine blades – out of 1,618 buckets in the Bangor database. Although the missing information was only discovered in 2011, the database purge itself took place in April, 2009.

## II. Discussion

When a party first reasonably foresees that litigation is on the horizon, it is required to suspend its ordinary policies governing how information is retained or destroyed and put into place a litigation hold to preserve relevant documents. *Krumwiede v. Brighton Associates, L.L.C.*, No. 05 C 3003, 2006 WL 1308629, at *8 (N.D. Ill. May 8, 2006) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)). This extends to all evidence that is discoverable under Fed. R. Civ. P. 26, which provides for the kind of electronically stored information ("ESI") at issue in this case. Fed. R. Civ. P. 26(a)(1)(A); *Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *4 (N.D. Ill. Oct. 27, 2003). Hold letters of the kind GE claims it issued are ordinarily not discoverable. *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009). Oleksy argues that GE's data purge constitutes

spoliation and that the Court should order the production of all documents related to the litigation hold as a sanction pursuant to Fed. R. Civ. P. 37.

As an initial matter, Oleksy's reliance on Rule 37 is misplaced. "The court may sanction a party for spoliation of evidence under either its inherent authority or under Federal Rule of Civil Procedure 37." *Haynes v. Dart*, No. 08 C 4834, 2010 WL 140387, at *3 (N.D. Ill. Jan. 11, 2010). Contrary to Oleksy's assumption, however, Rule 37 pertains only to circumstances in which a party has violated a court order such as a discovery ruling. Fed. R. Civ. P. 37(b)(2); *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994). By contrast, the Court's own authority encompasses its "inherent power to impose sanctions for abuse of the judicial system, including the failure to preserve or produce documents." *Northington v. H & M Int'l*, No. 08 C 6297, 2011WL 663055, at *12 (N.D. Ill. Jan. 12, 2011); *see also Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (stating that this power stems from a court's authority to manage its own affairs). Oleksy does not allege that GE violated any discovery order or other directive by the Court, and his motion is properly stated pursuant to the Court's inherent powers, not under Rule 37. Notwithstanding, the analysis that applies to both is essentially the same. *Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 23, 2000).

GE first argues that Oleksy's motion is improper because the parties did not meet and confer before the motion was filed on how to resolve their differences on the full range of issues presented in the motion. Northern District of Illinois Local Rule 37.2 provides that the Court will refuse to hear discovery motions unless the moving party states that it consulted in person or by phone with the opposing party and made good faith attempts to resolve differences, providing

the date, time, and place of such a conference as well as the names of the participating attorneys. N.D. Ill. R. 37.2. Oleksy's motion's certifies that he met this standard. Even assuming that the parties did not discuss all of the matters Oleksy now raises, the letters and emails attached to the motion reflect a lengthy and admirably professional exchange of ideas on a wide range of issues related to the motion. These documents show that the litigation hold issue was discussed. If the parties have not resolved all of their differences in the course of their previous discussions, they are unlikely to do so at this point if the Court delays considering the merits of Oleksy's motion.

More substantively, GE argues that the Bangor data purge does not rise to the level of spoliation and that, as a result, Oleksy has "failed in his burden to demonstrate why [the hold] documents are not protected by privilege or work product." (Def's. Resp. at 1.) Assuming that by "privilege" GE means the attorney-client privilege, Oleksy is not obligated to demonstrate why a privilege should be set aside until GE itself first shows that a privilege actually applies to its documents. "The party claiming the privilege has the burden of showing the specific facts giving rise to the privilege; blanket claims of privilege are improper." *Schachar v. Am. Acad. of Ophthalomology, Inc.*, 106 F.R.D. 187, 191 (N.D. Ill. 1985); *see also United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (stating that the party asserting a privilege has the burden of showing all of its elements). GE, however, has not presented any argument as to why the documents Oleksy seeks are privileged. It has long been the rule that the kind of broad and conclusory assertions GE relies on are improper to demonstrate that a privilege applies. *See*, *e.g.*, *Federal Trade Comm'n v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993) ("[M]ere conclusory statements will not suffice to meet that burden.").

The authority cited by GE shows that litigation hold documents are frequently privileged but that such a determination is based on the specific facts involved in the documents at issue, not on a *per se* rule that a privilege applies in all cases. *See Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007) (finding that litigation hold documents were privileged based on an *in camera* review of the disputed items); *see also Major Tours*, 2009 WL 2413631, at *2 (stating that hold letters are not discoverable "particularly when a party has made *an adequate showing* that the letters include material protected under attorney-client privilege or the work-product doctrine.") (emphasis added). Here, GE has not made any showing of a privilege and has not submitted the documents for an *in camera* review. Thus, the Court has no information as to what the documents specifically state or who issued them, and any finding that they are privileged would be based on speculation instead of evidence.

Even if a privilege does apply, moreover, GE has not shown why the Court should not exercise its inherent power to order their production in light of Oleksy's spoliation claim. Spoliation occurs when a party destroys evidence relevant to an issue in the case. *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). GE argues that its data purge was unintentional and that a party must act in bad faith before a spoliation sanction can be imposed. Although bad faith is required for a harsh sanction such as dismissal or an adverse inference, courts in this District have not interpreted Seventh Circuit precedent as requiring a showing of bad faith in all circumstances before imposing any form of discovery sanction. *See Northington*, 2011 WL 663055, at *13.

GE overlooks that the analysis of this issue is guided by three factors: (1) a breach of the duty to preserve or produce documents; (2) the level of culpability for the breach; and, (3) the

prejudice that results from the breach.  *Danis*, 2000 WL 1694325, at *31.  While bad faith is required for a serious sanction such as dismissal, a party's "fault" can suffice for less severe findings.  *Brandt*, 30 F.3d at 756 (stating that sanctions can be imposed on a finding of "wilfulness, bad faith *or fault*.") (emphasis added) (internal quote and citation omitted); *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (upholding a discovery sanction based on the exercise of "poor judgment"); *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) ("There is no legal basis for Goodyear's claim that sanctions should be limited solely to situations where the non-compliance is wilful or deliberate."); *Northington*, 2011 WL 663055, at *13 (citing cases).  This issue does not involve the motive behind the party's actions, but rather an examination of the reasonableness of the action.  *Wiginton*, 2003 WL 22439865, at *6 ("Fault does not refer to the noncomplying party's subjective motivation, but rather describes the reasonableness of the conduct.").

The relevant question, therefore, is whether or not GE's actions were unreasonable to such a degree that it was at fault for the data purge.  GE claims that the hold letter was not sent to the database manager because he did not work in Bangor and that no one at GE understood that the contents of the Georgia database were relevant to Oleksy's suit.  The Court finds this argument insufficient to show that GE was not at fault in failing to protect the data associated with the Bangor plant.  GE admits that activities at the Bangor plant are related to Oleksy's claims on the '529 patent.  (Def's. Resp. at 2.)  Indeed, the fact that GE did not send the hold letter to the database manager precisely because he was not in Bangor only underscores the fact that GE understood that the Bangor plant was relevant to claims related to the '529 patent.  In conceding that it failed to send the hold letter to the Georgia-based database manager, GE is

essentially stating that it either failed to understand where the Bangor data was stored or did not appreciate that the data itself would be discoverable evidence that should have been preserved. In either instance, GE has provided no explanation of why it did not understand the structure of its own internal operations or why it is not reasonable to assume that GE knew or should have known where the data associated with the Bangor facility was stored.

In the absence of such an explanation, the Court finds that GE was at fault and that its culpability reflects more than mere inadvertence or carelessness. GE was obligated to ensure that all relevant data associated with the Bangor plant was preserved, and the fact that the database manager was not informed of the litigation hold is not a defense to Oleksy's claim. *See Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1995 WL 519968, at *9 (N.D. Ill. Aug. 30, 1995). In addition, it is well established that the duty to preserve documents in the face of pending litigation "requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." *Northington*, 2011 WL 663055, at *11 (citing *Nat'l Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987)).

GE does not argue that the deleted ESI is not discoverable, though it claims in general terms that it is not relevant to this suit. As the details of the deleted information are, necessarily, not before the Court, its full relevance is impossible to ascertain. Nevertheless, GE's letter to Judge Gettleman states that the Bangor data included the cost per task for the "dovetailing" process that Oleksy claims is part of his '529 patent. GE alleges in the letter that this data is "not well-suited" for Oleksy's purposes, but GE provides no explanation or argument in its brief to this Court to support such a claim. Evidence is relevant if it has "any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and Oleksy is permitted to discover "any matter that is relevant to the claim or defense of any party . . . and is not privileged." Fed. R. Civ. P. 26(b)(1). As this Court has stated, discovery requests are relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Rubin v. Islamic Republic of Iran*, 349 F. Supp.2d 1108, 1111 (N.D. Ill. 2004). As GE understood that the operations at the Bangor plant were sufficiently related to this suit to warrant sending the litigation hold to it, the Court has no reason for not assuming that the data generated by the Bangor plant and stored in the Georgia database meet Rule 26's broad standard. Accordingly, the Court finds that the spoliated ESI was, presumably, both relevant and discoverable.

GE argues that Oleksy will not be prejudiced by denying his motion because the documents he seeks relate only to damages, not liability, and other information that GE has already produced allows Oleksy to calculate his damages. In support, GE relies exclusively on its letter to Judge Gettleman, which states that data equivalent to the information that was lost in the Bangor purge were turned over from GE's Bedford Park facility. Such a claim is insufficient to show that no prejudice will result from the data purge. GE has not produced any examples of the Bedford Park data or the unpurged Bangor data, and the Court has no evidentiary basis to determine that the two are equivalent to one another or that the Bedford Park data corresponds with the time period at issue in the Bangor purge. Without such evidence, GE has not shown how Oleksy can calculate his damages based on the Bedford Park data.

GE's letter further states that Oleksy can calculate the cost per bucket, the total labor time for each bucket, and each "before step" for the Bangor plant from the documents that have already been produced. Again, however, GE fails to explain how such equivalent calculations can be made on these issues. The Court notes that GE has submitted as part of its brief an email sent earlier to Oleksy that makes similar claims and identifies certain documents by Bates numbers from which Oleksy could allegedly make such calculations. (Def's. Resp. at Ex. 2.) Oleksy clearly disagrees that these are sufficient for his purposes. In the absence of any direct evidence showing what these documents are and why the information they contain supports GE's claim – and GE has provided no copies of any of the documents in its Exhibit 2 or any other evidence relating to this issue – the Court has no basis for concluding that GE's claim that Oleksy will not be prejudiced is well reasoned.

The Seventh Circuit has directed courts to impose discovery sanctions only in proportion to the offending conduct. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994). Applying that standard here, the Court finds that even if the documents requested by Oleksy are privileged, GE's failure to preserve the lost data entitles Oleksy to the information he seeks. The Court, however, agrees with GE that Oleksy's request for document retention polices extending back to 1997 and 1998 is excessively broad. Although the parties first discussed the '529 patent during that time period, Oleksy has not presented any evidence suggesting that GE eliminated any other data before this suit was initiated. Moreover, Oleksy has not replied to GE's claim that the 1997/1998 information is not relevant, and the Court has no basis for determining why the 2009 data purge would entitle Oleksy to such broad discovery. Oleksy's

request, therefore, is limited to the period extending from the time this suit was initiated in 2006 to the present.

### III. Conclusion

For the foregoing reasons, Oleksy's Renewed Motion to Compel and Motion to Compel Litigation Hold Documents is granted in part. Within twenty-one days of the entry of this Order, GE shall produce copies of its document retention policies, the litigation hold letters issued in this case, documents relevant to the steps GE took to institute the hold, and insofar as it possible to do so, a description of all purged data relevant to Oleksy's claims. The time period for this production is limited from the date this suit was initiated to the present.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**
**Dated:** August 8, 2011.                           United States Magistrate Judge