**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HENRYK OLEKSY**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 1245 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| **GENERAL ELECTRIC CO.**, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant General Electric Co.'s ("GE") Motion for Reconsideration of this Court's August 8, 2011 order granting Plaintiff Henryk Oleksy's ("Oleksy") Renewed Motion to Compel and Motion to Compel Litigation Hold Documents from GE. The Court ordered GE to produce copies of its document retention policies, litigation hold letters, and documents relevant to the steps GE took to institute the hold as a discovery sanction. GE now argues that the Court misunderstood its earlier argument and overlooked relevant evidence.

A motion for reconsideration is narrowly designed "to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc*., 762 F.2d 557, 561 (7th Cir. 1985). It is not, however, designed to allow parties to raise legal theories or arguments that could have been raised in the original motion. *Woods v. Michigan City*, 940 F.2d 275, 280 (7th Cir. 1991). Nor may parties use such a motion to rehash arguments previously rejected by the court. *Sikora v. AFD Indus., Inc*., 18 F. Supp.2d 841, 844 (N.D. Ill. 1998). Instead, a motion for reconsideration "must clearly establish either a

manifest error of law or fact or must present newly discovered evidence" in order to be persuasive. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (internal quote and citation omitted).

GE first argues that the Court decided issues outside the adversarial process by improperly finding that GE failed to demonstrate that its litigation hold documents are privileged. According to GE, this issue was not presented to the Court in the parties' briefs, and GE had no reason to believe that it was required to demonstrate that a privilege applied. This argument is not directly relevant to the Court's ultimate finding. The Court stated that even if the litigation hold documents are privileged, GE failed to show why the Court should not exercise its inherent power and order their production in light of GE's failure to preserve evidence it had reason to know was relevant to this litigation. (Order at 6).

GE's argument is also incorrect. GE directs the Court's attention to a lengthy letter attached to Plaintiff's motion that allegedly shows that Oleksy did not challenge GE's claim that the documents are protected by a privilege. The Court reviewed the letter as part of the initial motion and has done so again. Contrary to GE's claim, Oleksy did not concede that privileges were not at issue; he merely stated that GE's argument that a privilege applied was "misplaced" because the privilege had been waived by GE's own actions. (Plt's. Mot. at Ex. L). Oleksy made the same claim in his motion. The motion was less than clear in several respects, but in arguing that GE's failure to preserve evidence waived an applicable privilege, Oleksy did not admit that privileges were not at issue at all. Rather, he assumed that they were relevant but had been waived by GE's destruction of evidence.

GE overlooks that the company itself took one step back in its response and addressed Oleksy's assumption directly, arguing that the litigation hold documents were protected from discovery precisely *because* they are privileged. See Def's. Resp. at 9 ("Oleksy's request to compel GE to produce its litigation hold documents should be denied because the documents are privileged."). GE's claim at this point that it did not know that privileges were really at issue in the earlier motion is difficult to square with this statement in its response, which occurs under a bold heading further asserting, "The Litigation Hold Documents are Privileged." *Id*. Thus, GE's response directly asserted the privilege claim the company now argues was never raised.

GE next claims that the Court erred in finding that the destruction of evidence and the sanctions stemming from it must involve "bad faith" and nothing less.[1] This claim is not addressed in full here because it restates arguments earlier presented by GE and discussed by the Court in its Order. GE is correct that some courts have stated that bad faith is required for a finding of spoliation, although a number of the cases cited by GE involve the imposition of harsh sanctions that are not at issue here. Contrary to GE's claim, courts have been clear that "[b]ad faith is not a precondition to the imposition of sanctions" for failing to preserve evidence. *Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *7 n.7 (N.D. Ill. Oct. 27, 2003). As the Seventh Circuit has stated, "[t]here is no legal basis for [the] claim that sanctions should be limited solely to situations where the non-compliance [with discovery obligations] is wilful or

---

[1] GE takes further issue with the Court's citations of *Smith v. United States*, 293 F.3d 984 (7th Cir. 2002) and *Northington v. H & M Int'l*, No. 08 C 6297, 2011 WL 663055 (N.D. Ill. Jan. 12, 2011). GE appears to assume that the Court relied directly on these cases to reach its decision. That is not the case, however. The Court was fully aware that these cases involved different issues than those presented here and cited them for certain principles that accord with the array of other authorities in the earlier Order.

deliberate." *Marrocoo v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). *See also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) (stating that sanctions can be imposed on a finding of "wilfulness, bad faith, or fault.").

However, GE also argues for the first time that courts in this Circuit will not pierce a privilege in the absence of a showing of bad faith and cites in support the Seventh Circuit's decision in *Am. Nat. Bank and Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U. S.*, 406 F.3d 867 (7th Cir. 2005). GE's own authority shows that is not the case. *See id.* at 887 ("[G]iven the absence of bad faith, wilfulness, *or fault*, [appellant] should not have been sanctioned" by the waiver of a privilege) (emphasis added). Moreover, GE cannot invoke the bad faith standard to protect its allegedly privileged documents without first demonstrating that they are, in fact, privileged. The time for doing so was as part of the earlier motion. GE now provides the Court with copies of the litigation hold documents for an *in camera* inspection designed to show that a privilege applies. As these documents are not newly discovered and were fully available to GE as part of its response to Oleksy's motion, the Court declines to review them as part of the instant motion. *See Caisse Nationale de Credit Agricole v. CBI Inds., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (stating that motions for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the" previous motion) (internal quote and citation omitted).

GE contends that its actions related to the data purge were reasonable and claims that the company did not emphasize this fact in the earlier motion because Oleksy did not raise it as an issue in his motion. As the Court noted, both parties overlooked the standard that governs the underlying dispute: (1) whether a breach of the duty to preserve documents took place; (2) the

level of culpability for the breach; and, (3) the prejudice that results. *Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *31 (N.D. Ill. Oct. 20, 2000). This standard is well-established, and whether or not Oleksy recognized it in his motion, GE was still obligated to do so in its response. Thus, any argument that GE was somehow unaware of its duty to fully demonstrate the reasonableness of its acts is misplaced.

GE also contends that the Court overlooked evidence that led GE to reasonably believe that it did not need to preserve the evidence Oleksy seeks. According to GE, it was not foreseeable at the time of the data purge that the evidence was relevant; only when Oleksy later changed his damages calculations did the purged data take on the relevance Oleksy now claims it has. The Court did not elaborate on this claim in its earlier Order because GE's response did not explain its position, merely directing the Court's attention instead to the April 12, 2011 letter GE sent to District Judge Gettleman. The letter states that GE only became aware of the relevance of the purged data once Oleksy's new counsel began arguing that damages should be calculated based on time savings instead of profit margins. (Plt's. Mot. at Ex. R).

As before, the Court finds this explanation unpersuasive. GE's focus on what Oleksy said at various points during the litigation misses the relevant issue. GE's preservation duty was neither triggered by, nor limited to, the terms of such discussions; instead, it began when GE first knew litigation was on the horizon and encompassed, at *that* point, all potentially discoverable evidence. *Wiginton*, 2003 WL 22439865, at *4; *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("A party . . . must retain all relevant documents . . . in existence at the time the duty to preserve attaches, and any relevant documents created

thereafter.").[2]  Courts have identified the scope of the duty with the disclosure obligations imposed by Fed. R. Civ. P. 26.  "This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery – whether the documents are good, bad, or indifferent."  *Danis*, 2000 WL 1694325, at *1.  Discovery relevance is governed by the standard of Fed. R. Civ. P. 26(b)(1), which permits discovery "of any matter that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1).  The scope of Rule 26(b)(1) is broader than GE acknowledges because evidence is relevant "if there is any *possibility* that the information sought may be relevant to the subject matter of the action."  *Rubin v. Islamic Republic of Iran*, 349 F. Supp.2d 1108, 1111 (N.D. Ill. 2004) (emphasis added).

This standard imposed greater preservation duties on GE than the company assumes.  In its reply brief, GE contends that it was not required to anticipate how Oleksy might calculate his damages.  The Court agrees that speculation was not required, but that does not define the obligations at issue under these facts.  The relevant issue is not what Oleksy himself would eventually base his version of damages on, but what a defendant like GE could reasonably have anticipated would be discoverable as part of damages on a patent infringement claim.[3]  *See*

---

[2]  The Court agrees with GE's argument at the hearing that it was not required to preserve every scrap of evidence.  *See Danis*, 2000 WL 1694325, at *32.  However, GE has not made any showing that the purged information does not exceed such a low threshold.  As the influential case of *Zubulake* makes clear, even a large corporation, which could be crippled by having to retain every piece of information, must still "not destroy unique, relevant evidence that might be useful to an adversary."  *Zubulake*, 220 F.R.D. at 217.

[3]  GE claims, in part, that the purge was defensible because the information was not relevant to a specific discovery request, and at the hearing both parties discussed the reasonableness of the data purge in terms of such a request.  (Reply at 4).  This argument misses the point, however, because "[a] formal discovery request is not necessary to trigger the duty to preserve evidence."  *Bryant v. Gardner*, 587 F. Supp.2d 951, 968 (N.D. Ill. 2008).

*China Ocean Shipping (Group) Co. v. Simone Metals, Ind*., No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999) ("The duty to preserve evidence includes any relevant evidence over which the nonpreserving entity had control and reasonably knew or could foresee was material to a potential legal action.").

For his part, Oleksy states that his patent infringement damages were always based on a theory of a reasonable royalty calculation. GE does not dispute this, nor does it argue that the purged data was, in fact, relevant to such damages. Instead, GE claims somewhat obliquely that there are "countless" ways of calculating a royalty. Restated in more direct terms, GE appears to argue that it was unforeseeable that data it possessed – evidence that it does not claim was unknown, inaccessible, or irrelevant – might have been discoverable under Rule 26(b)(1) as part of a reasonable royalty calculation.

This argument faces several strong headwinds that GE does not address. First, GE only asserts this issue for the first time in the instant motion, having raised the "surprise" claim in the earlier proceeding without arguing that GE could never have foreseen the various ways in which a royalty might be calculated. Second, GE's broad argument is stated in generalized terms and does not address why GE could not have reasonably foreseen that *this* set of data could have been discoverable in relation to the specific patent infringement claim raised by Oleksy. GE's defense is based on the assumption that GE was, from the start, dependent on Oleksy to come up with the damages model that would be used in the case and that GE itself could not envision competing models that might apply. GE presents no authority for this proposition. *See Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1579 (Fed. Cir. 1996) (stating that trial courts have

discretion "both in selecting the methodology and in calculating a damage award" for infringement).

Moreover, simply stating without further elaboration that a myriad number of royalty possibilities exists fails to address why GE could not have known that some were more probable than others under the specific facts of this case. There are not, in fact, an infinite number of ways of calculating a royalty, as GE claims. Damages in patent cases are measured under 35 U.S.C. § 284 in one of two ways – actual damages, if the evidence permits a calculation of lost profits, or a reasonable royalty. 35 U.S.C. § 284. GE does not argue that it did not know from the start that the reasonable royalty method applies here. True, it is often less than clear what a reasonable royalty is. Accordingly, the Federal Circuit has found that it should be calculated as a hypothetical negotiation between the patent holder and the infringer based on a list of relevant factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).[4] *See ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 868-69 (Fed. Cir. 2010). *Georgia-Pacific* includes fifteen factors on this issue. *Georgia-Pacific*, 318 F. Supp. at 1120.

While broad, these factors do not constitute "countless" means for measuring a royalty that left GE unable to preserve the purged data prior to discussion with Oleksy's second counsel. On the contrary, they put GE on notice as to specific issues that *could* be relevant to damages, and they did so as soon as GE knew of Oleksy's infringement claim. GE is correct in implying that reasonable royalty calculations are multiform and involve, as the Federal Circuit has aptly

---

[4] A reasonable royalty can also be calculated using the analytical method, which focuses on the infringer's profit projections for the infringing product. *See TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986). This is, however, less common than the hypothetical negotiation method. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

stated, both "fantasy and flexibility." *Fromson v. Western Litho Plate and Supply Co*., 853 F.2d 1568, 1575 (Fed. Cir. 1988). But in order to sustain its argument GE must address why it could not have foreseen that the purged data could have been relevant in light of these well-known factors. GE does not discuss any specific issue related to the *Georgia-Pacific* factors or their foreseeable application to the purged data. The Court finds this insufficient to show error in the earlier Order.

Finally, GE argues that the Court erred in finding that GE failed to show that Oleksy can calculate his damages based on non-purged data. GE's prejudice argument in its response was brief and unsupported by argument or examples. *See* Response at 2-3 ("Oleksy will not be prejudiced because the lost data relates only to damages, not liability, and the information remaining in the database in combination with other financial information produced by GE will be more than adequate for Oleksy to accurately calculate his alleged damages."). Instead, GE referred the Court to Oleksy's Exhibit K, a letter sent to him by GE explaining how such calculations could be made from existing data. Oleksy clearly found this to be insufficient, and the Court noted that GE had failed to (1) produce any examples of data from its Bedford Park facility that allegedly provided data equivalent that what was purged, (2) explain how Oleksy could fully calculate his damages from data that had already been produced, or (3) provide the data it claimed formed the basis for such calculations. GE's earlier response did not directly address any of these issues. GE attempts to remedy the situation at this point by providing a lengthy data table that allegedly shows how alternative data can be used to recreate the purged data. As with the documents submitted for an *in camera* review, however, this evidence should

have been produced as part of the earlier proceeding, and the Court declines to consider it on

reconsideration. *See Woods*, 940 F.2d at 280.

For these reasons, therefore, GE's Motion for Reconsideration is denied.

**ENTER ORDER:**

_____
        **MARTIN C. ASHMAN**

**Dated:** October 3, 2011.        United States Magistrate Judge