IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRYK OLEKSY, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) No. 06 C 1245 ) |
| GENERAL ELECTRIC CO., | ) Judge Virginia M. Kendall ) |
| Defendant. | ) ) ) ) ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Henryk Oleksy filed suit against General Electric Co. ("GE") alleging that GE infringed his patented method for determining machining instructions to cut the root sections of turbine blades. This protracted litigation has involved substantial motion practice and multiple discovery disputes. The Court will address two more disputes in this memorandum opinion and order. First, GE moved for leave to amend its final invalidity contentions, pursuant to the United States District Court for the Northern District of Illinois's Local Patent Rule 3.4, to add an anticipation defense based on a prior art process performed by Turbine Blading Ltd. ("TBL"), a GE subsidiary. *See* Doc. 337. Subsequently, GE filed an Amended Answer and Counterclaims that added this anticipation defense as an affirmative defense. *See* Doc. 387. In addition to opposing the motion for leave to amend the invalidity contentions, Oleksy moved to strike this affirmative defense from the amended pleading. *See* Doc. 390.

Second, GE filed objections to Magistrate Judge Ashman's August 8, 2011 Order requiring GE to produce its document retention policies, litigation hold letters, documents

relevant to the steps GE took to institute the hold and a description of all purged data relevant to Oleksy's claims. Doc. 260. GE has also separately moved to vacate Judge Ashman's Order. Doc. 259. For the reasons set forth below, the motion to amend the final invalidity contentions is granted in part and denied in part, Oleksy's motion to strike is denied, the objections to Judge Ashman's Order are overruled and GE's motion to vacate is denied.

## THE MOTION TO AMEND FINAL INVALIDITY CONTENTIONS

**I.      Background**

Oleksy filed this action in March 2006 alleging that GE infringed claims of his '529 patent. The '529 patent claims a method for determining the machining instructions for a computer numerical controlled ("CNC") machine to mill the root sections of turbine blades. The instant litigation has proceeded in stops and starts due to, among other reasons, the United States Patent Office's reexamination of the patent and Oleksy's decision to change counsel multiple times.

The case was transferred to this Court on November 5, 2012. The Court entered a scheduling order on November 20, 2012 that set the deadline for GE to serve its Final Invalidity Contentions on December 5, 2012. GE complied with this order. As part of its Final Invalidity Contentions, GE provided claim charts for seven prior art references that GE contends invalidate the asserted claims. The prior use defense was based on GE's use of CNC machining methods at its Bangor, Maine facility. That facility allegedly began to machine root sections with a CNC machine in the 1980s.

One of GE's foreign subsidiaries is TBL, an English company that manufactures turbine blades. TBL purchased its first CNC machine in 1982 and began selling turbine blades made on the machine to U.S. customers in 1983. GE acquired TBL in 1998 and TBL currently

manufactures large blades for GE turbines. On January 29, 2013, Oleksy deposed Jacek Przybylski, a machinist at the Bedford Park, Illinois factory of GE subsidiary Preferred Machine and Tooling. During the deposition, Przybylski testified that the Bedford Park facility began to employ CNC machining after TBL personnel visited the Bedford Park facility in 2009 and taught the machinists there to use TBL's method of CNC machining. After receiving this information, Oleksy requested documents regarding TBL's process and a witness to testify on the subject.

During the course of responding to Oleksy's discovery requests with respect to TBL, GE discovered that TBL had imported its turbine blades with its CNC machining process since the 1980s. GE contends that this fact renders Oleksy's patent invalid. After asking Oleksy if he opposed GE amending its invalidity contentions, GE filed the instant motion a month and half after it allegedly discovered the facts that would support this invalidity contention.

## II.     Legal Standard

The Local Patent Rules of the Northern District of Illinois obligate patent litigants to timely identify the bases of their infringement contentions and their non-infringement, unenforceability and invalidity contentions. Local Patent Rule 3.4 provides in relevant part that:

> A party may amend its Final Infringement Contentions; Final Non-infringement, Unenforceability and Invalidity Contentions; or Final Contentions in Response to any Unenforceability and Invalidity Contentions only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment.

N.D. Ill. L.P.R. 3.4. Courts have interpreted the good cause requirement to not only require a showing that a valid basis for amendment exists but also that the party seeking leave to amend acted diligently. *See, e.g., Thermapure, Inc. v. Giertsen Co. of Illinois,* No. 10 C 4724, 2012 WL 6196912, at *1 (N.D. Ill. Dec. 11, 2012); *Fujitsu Ltd. v. Tellabs Operations, Inc.,* Nos. 08 C 3379, 09 C 4530, 2012 WL 5444979, at *4 (N.D. Ill. Mar. 21, 2012). The burden of establishing

3

diligence and lack of prejudice falls on the party seeking leave to amend. *See 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366-67 (Fed. Cir. 2006); *Tellabs,* 2012 WL 5444979, at *7; *Thermapure,* 2012 WL 6196912, at *1. Concluding that a party has established the good cause requirement is within the sound discretion of the district court. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1380 n. 5 (Fed. Cir. 2005); *see also, e.g., Thermapure,* 2012 WL 6196912, at *1.

### III. Discussion

#### A. GE Established Good Cause

Oleksy does not appear to dispute that a valid basis for amendment exists. In other words, he does not argue the assertion of a prior use defense based on the process used at TBL would be frivolous with respect to the merits of the case. Additionally, assuming the truth of GE's assertion that it first discovered the details of the process used by TBL in the 1980s during the January 29, 2013 deposition of Przybylski, Oleksy does not dispute, and thus concedes, that GE acted diligently in pursuing the amendment because it filed its motion for leave soon after discovering the defense. Instead, Oleksy argues that GE was not diligent in pursuing the amendment because GE has been aware of the process used at TBL since 1998.

Oleksy contends that GE has known about the TBL process since 1998 because: (1) GE purchased TBL in 1998; (2) engineers from other GE facilities worked with engineers from TBL and knew the TBL Process; (3) GE certified the TBL Process twice – once before 2002 and again in 2008-2009; and (4) David Sprague, an engineer at GE's Bangor, Maine facility, learned about TBL's process in 2000. However, the evidence presented by Oleksy does not conclusively support these assertions.

4

First, while GE purchased TBL in 1998 and performed due diligence during the acquisition process, Oleksy fails to show that GE learned of TBL's process for manufacturing the root sections for turbine blades at the time of acquisition. In fact, Steve Jordan's deposition testimony, which is heavily relied on by Oleksy, shows that only one meeting occurred where representatives from GE toured the TBL factory. Doc. 347 at Ex C., p. 31. Jordan did not testify that he, or anyone else at TBL, explained the process used by TBL to manufacture root sections to the GE personnel. Moreover, the fact that a GE employee was subsequently appointed as TBL's manager does not establish that GE or Alan Sides, the manager, was aware of the process used by TBL to machine root sections. Sides submitted an affidavit in which he declared that he never attained any knowledge regarding TBL's manufacturing process. *See* Doc. 348 at Ex. 1, Declaration of Alan Sides, ¶ 3. The Court sees no basis to question the accuracy of this declaration.

Second, the evidence relating to the qualification procedures does not establish that GE became aware of TBL's process for machining root sections in the 1980s. Rather, the testimony establishes that "[t]he qualification process is structured around a demonstration that [TBL could] manufacture the part to meet the requirements" of GE's drawing and specifications. Doc. 347 at Ex. C, p. 101. Thus, it appears that the qualification process focused on whether TBL could produce parts in accordance with GE's specifications, not on how TBL actually determined its machining instructions. A fact confirmed by the affidavit of David Sprague, a manufacturing engineer at GE's Bangor facility. *See* Doc. 348 at Ex. 2, Declaration of David Sprague, ¶ 3 ("I am familiar with GE's process of qualifying manufacturers of turbine blades. In the qualification process, GE determines whether the manufacturer is capable of producing a turbine blade that meets specifications. As long as the manufacturer is capable of doing so, GE

5

does not investigate the specific process used to produce the blade, such as the manufacturer's computer code or the path of its cutting tool on any CNC machine used.").

Oleksy did submit evidence suggesting that GE became aware of TBL's process for manufacturing root sections in 2009. A powerpoint presentation prepared by TBL that summarizes a number of meetings between TBL, Preferred Machine & Tool and GE personnel states that "[h]opefully one major benefit that TBL has been able to share with PMT is that of machining the radial root features via CNC rather than manually as is currently the case." Doc. 347 at Ex. H. The powerpoint goes on to generally discuss the process TBL used. *See id.* However, the most this powerpoint establishes is that GE learned in 2009 of the process TBL used in 2009. It does not establish that GE learned that TBL has used this process since the 1980s. This is the fact that GE seeks to assert as its prior use defense. *See* Doc. 337 at Ex. 1, p. 4-5 ("TBL purchased its first CNC machine in 1982 from Italian company Mandelli Industrie...The machine came with a macro that determined, using trigonometry, the code that was then used by the CNC machine to mill pine-tree shaped root sections...TBL began selling turbine blades made on the CNC machine in 1983.").

Third, while Sprague's deposition testimony establishes that he visited TBL and knew that TBL manufactures steam turbines, the deposition testimony cited by Oleksy does not demonstrate that Sprague knew the specifics of the manufacturing process TBL used. The emails cited by Oleksy that show that Sprague, at the request of TBL, sent TBL dovetail cutters from Bangor also do not establish Sprague's knowledge. In fact, the reasonable inference is the opposite because the e-mails show that Sprague sent TBL dovetail cutters that were not compatible with TBL's machines. *See* Doc. 347 at Ex. B ("Dave, The dovetail cutters finally arrived earlier today, however after they were un-packed we have found that they will not fit

6

onto our machine due to a difference in the tool clamping arrangement.") This is confirmed by Sprague's affidavit. Doc. 348 at Ex. 2 (stating that Sprague is not aware of the process used by TBL "to generate its computer code for any CNC machine used to manufacture steam turbine blades, including the code that determines the path of the cutting tool in the CNC machines used by TBL."). Therefore, the Court will credit GE's representation that it did not become aware of the process TBL used in 1980s until January 2013 and finds that GE acted diligently in pursuing the amendment.

    **B.**  **Oleksy Is Not Prejudiced by the Amendment**

The Court also finds that GE has established Oleksy would not be prejudiced by this amendment. As an initial matter, the parties' Final Infringement and Invalidity Contentions were not due until December 5, 2012. Therefore, the Court must determine whether Oleksy would be unduly prejudiced by the three-month delay between the date the Final Invalidity Contentions were due and the time GE sought leave to amend those contentions. As a result, GE has not delayed asserting this defense for seven years, as Oleksy contends, it delayed three months. This renders the majority of the prejudice asserted by Oleksy to be irrelevant.

For example, Oleksy contends that he would be prejudiced because documents relating to the TBL process could have been destroyed because TBL only holds records for seven years and did not receive a litigation hold notice until January 2013. However, the risk of document destruction from the ordinary course of business would exist regardless of whether GE asserted this defense in December 2012 or March 2013. Therefore, GE's delay does not prejudice Oleksy on this ground.[1] The reasoning is equally applicable to the issue of locating TBL's witnesses.

---

[1] The Court does not imply that the destruction of documents could not prejudice Oleksy; rather, the prejudice, if any, was not caused by the three month delay. The Court notes that the issue of whether GE should have issued litigation hold notices to foreign subsidiaries, such as TBL, at the outset of the litigation is not before it and further notes that there is no evidence that any responsive TBL documents were destroyed.

7

The Court also does not find the discovery time and costs that are associated with the TBL defense are overly prejudicial to Oleksy. First, TBL's process is relevant to GE's defense of non-infringement. Namely, Oleksy has accused GE's Bedford Park, Illinois facility of infringing his patent. GE contends that Bedford Park uses the TBL method. Since TBL allegedly began using this process before Oleksy patented his method, TBL's method is relevant to determining whether GE has infringed on the patent. Therefore, discovery on the TBL process would likely have to be performed regardless of whether or not this prior use affirmative defense is allowed. Moreover, while the speed of the case has accelerated since it was transferred to this Court, the Court notes that there is still time before the fact discovery cut-off to take the necessary discovery on this issue.

Finally, Oleksy argues that since GE has used questionable discovery tactics, discovery on this additional issue will only aggravate the already pending disputes. However, as set forth above, it appears that discovery on this issue will need to be taken regardless of whether the prior use defense is allowed. While discovery in this case has been contentious, the Court believes the parties will honor their professional responsibility obligations and produce the documents and witnesses they are required to. Accordingly, the Court grants the motion to add the prior use defense based on TBL's process. Correspondingly, the Court denies Oleksy's motion to strike the defense.

### C. Request for Clarification on Other Defenses

GE also asked the Court's permission to: (1) formally include in its Invalidity Contentions the names of all GE personnel involved in the prior uses; (2) clarify its prior use defense to show that there were two distinct uses of prior in the 1990s; and (3) incorporate by reference into its Amended Contentions the invalidity arguments it made in its briefing in

8

support of its Motion for Summary Judgment of Invalidity under Section 101 and its claim construction briefing on indefiniteness. Oleksy does not appear to contest GE's request to formally include the names of all GE personnel involved in the prior uses. He also does not contest GE's request to clarify its prior use defense to show that there two distinct prior uses. Therefore, the motion to clarify with respect to those two requests is granted. The motion to incorporate the arguments on indefiniteness from the motion for summary judgment and claim construction briefing is denied as moot in light of the Court's June 26, 2013 decision on those motions.

## THE OBJECTIONS TO JUDGE ASHMAN'S AUGUST 8, 2011 DISCOVERY ORDER

### I.     Background

Before this case was transferred to this Court the parties had engaged in discovery for a number of years. At the outset of the litigation, in accordance with its obligations under the Federal Rules of Civil Procedure, GE instituted a litigation hold in an effort to preserve documents, including electronically storied information ("ESI"), that were potentially relevant to the issues presented by the litigation. After the case had been stayed pending the reexamination of the patent, GE began producing documents responsive the Oleksy's document requests in August 2009.

On April 12, 2011, however, GE sent a letter to Judge Gettleman, who was presiding over the case at the time, and Oleksy's counsel advising them that GE discovered that data that should have been subject to the litigation hold had been purged from a GE database. *See* Doc. 260, Ex. 1. Specifically, according to GE, its "Shop Order Database" in Alpharetta, Georgia contains data that shows the labor costs, broken down by task, for GE to produce an order of air foil turbine blades at its Bangor, Maine facility. *Id.* The Shop Order Database has a capacity of

4 gigabytes. *Id.* When the database is nearly at capacity, GE's IT department makes a request to a steering committee, which then approves the removal of the data. *Id.* Typically, according to GE, data for all closed orders older than one year and orders that no longer have open inventory lots are removed. *Id.* Data relating to 498 orders, out of 1,618 orders, from the Bangor plant were purged from the Shop Order database. *Id.* The purge occurred in 2009; however, the missing information was only discovered in 2011. *Id.*

After GE informed Oleksy of the purge, Oleksy moved to compel GE to produce its litigation hold documents. Doc. 178. Oleksy argued that the documents were discoverable in light of the purge because "GE's conduct raises doubts as to the sufficiency of its litigation holds procedures – particularly in light of the lack of documentation produced regarding Request No. 30 – that merit exploration to determine whether Oleksy is entitled to an inference that the documents, had they been preserved, would have shown facts in his favor." *Id.* at 2.

On August 8, 2011, the magistrate judge assigned to the case at the time, Judge Ashman, granted the motion to compel and ordered GE to produce copies of its document retention policies, the litigation hold letters issued in this case, the documents relevant to the steps GE took to institute the hold, and insofar as it was possible to do so, a description of all purged data relevant to Oleksy's claims. Doc. 185. The magistrate granted the motion to compel for two distinct reasons. First, he found that GE had the burden to establish that its litigation hold documents were privileged and it failed to do so. *Id.* at 5-6. Second, he found that even if GE had established that the documents were privileged, the privilege was waived as a sanction for GE's failure to preserve the documents that were purged from the "Shop Order Database." *Id.* at 6-11.

GE moved the court to reconsider its on very similar bases as are raised in its objections. Doc. 186. Namely, the magistrate erred in finding that GE failed to establish the privilege because Oleksy had conceded the documents were privileged. *Id.* Thus, the only question on the motion to compel was whether GE had waived the privilege. Second, GE argued that the magistrate erred in imposing a discovery sanction because there was no finding that GE acted in bad faith. *Id.* GE's motion for reconsideration was denied. Doc. 203. GE then timely filed objections to Judge Ashman's Order. Doc. 212.

After the case was reassigned to this Court, GE filed supplemental objections to Judge Ashman's Order and also moved to vacate the Order. Docs. 259-60. GE moved to vacate the order on the basis that subsequent to Judge Ashman's rulings, it recovered the data that had been purged from the Shop Order Database. Doc. 259. Specifically, GE contends that the Shop Order Database calculated the labor costs associated with manufacturing a turbine blade order by multiplying the labor times by the wage rates of the specific employees who performed the labor. *See id*, Ex. 5, Declaration of Anthony Walsh, Executive Counsel of Litigation for GE Power & Water, ¶ 10. GE contends that the information related to the labor times was never lost because it was contained in GE's vouchering system and was produced to Oleksy. *Id* at ¶¶ 11-12. GE also states that the identity of the employees who performed the labor was never lost. *Id.* at ¶ 12. Instead, the only information that was purged and thought to be unrecoverable was the historic wage data. *Id.*

During oral arguments on the motion to compel on July 13, 2011, Judge Ashman asked GE if it would be willing to provide an affidavit setting out what searches GE made, when those searches were made, from whom documents were collected, and the reason certain types of documents were not in GE's collection. *Id.* at ¶ 16. GE agreed to provide this affidavit but

11

apparently did not start to collect the information necessary for preparing the affidavit until after Judge Ashman denied GE's motion for reconsideration on October 3, 2011. *Id.* at ¶¶ 12, 18-19. In the course of preparing the affidavit, GE discovered that the historical wage rates of the employees who worked on the production of the Bangor turbine blades could be located from another source. *Id.* at ¶ 19. Thus, according to GE, all the data necessary to calculate the actual labor costs for the 474 blades that had been purged from the Shop Order Database had been maintained. *Id.* at ¶ 20.

## II. Legal Standard

A magistrate judge's order concerning nondispositive pretrial matters is reviewed by this Court under the highly deferential clearly erroneous or contrary to law standard of review. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a) ("The district judge in the case must set aside any part of the order that is clearly erroneous or contrary to law."); *see also Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 943 (7th Cir. 1997) (holding that review of a magistrate's discovery-related decision is governed by Rule 72(a) and the decision may only be set aside if it is clearly erroneous or contrary to law); *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 760 (7th Cir. 2009) (holding that clearly erroneous standard applies to non-dispositive decisions by magistrates).

A decision by a magistrate judge is clearly erroneous only when "the reviewing court on entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)); *see also Weeks,* 126 F.3d at 943. When performing

clear error review, the district court should not overturn a decision by the magistrate judge merely because the district judge would have independently come to a different conclusion from the one reached by the magistrate judge on the same set of facts. *See Pinkston v. Madry,* 440 F.3d 879, 888 (7th Cir. 2006). In other words, "if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view." *American Motors Corp. v. Great American Surplus Lines Insurance Co.,* No. 87 C 2496, 1988 WL 2788, at *1 (N.D. Ill. Jan. 5, 1988).

**III. Discussion**

The magistrate granted Oleksy's motion to compel production of the litigation hold documents for two distinct reasons. First, he found that the documents were relevant and that GE failed to establish that they were privileged. Second, he concluded that even if GE had established the documents were privileged, they were still subject to production as a sanction for GE's failure to prevent the destruction of relevant evidence. The Court does not find either determination to be clearly erroneous.

**A. The Magistrate's Determination that GE Failed to Establish that the Litigation Hold Documents were Privileged Is Not Clearly Erroneous**

GE does not dispute, and thus concedes, that litigation hold notices and document retention policies are not *per se* privileged. Rather, a party asserting a privilege bears the burden of establishing the existence of the privilege. *See United States v. BDO Seidman,* 337 F.3d 802, 811 (7th Cir. 2003). However, GE contends it was relieved of this burden with respect to the litigation hold documents because Oleksy purportedly conceded that they were privileged. As a result, GE objects to the magistrate's determination that it failed to establish that the litigation hold documents in this case were privileged.

According to GE, the only issue presented by the motion to compel was whether GE waived the privilege. In support of this argument, GE selectively quotes from Oleksy's brief to show that Oleksy focused on waiver. Additionally, GE argues that Oleksy "conceded that the litigation hold documents were privileged when he agreed that GE need not submit a privilege log for them." Doc. 259 at 9. However, the record presented by GE does not establish that the magistrate's decision was clearly erroneous.

As an initial matter, while there may be prudential reasons for a court to rely on the parties' representations regarding the existence of a privilege in addressing a discovery dispute, neither party cites, nor could the Court locate, any binding authority that prohibits a judge from *sua sponte* inquiring into the basis for the assertion of a privilege. Without such a prohibition, it is impossible to conclude that the magistrate's decision to hold the party asserting the privilege to its burden of establishing the privilege was clearly erroneous.

Second, while Oleksy's briefs focus on the waiver issue, they do not affirmatively concede that GE's litigation hold documents are privileged. Indeed, in making his waiver arguments, Oleksy repeatedly qualified that the existence of the privilege is only "generally" true. Doc. 178 at 7. He also cited a case that required litigants to establish the existence of the privilege before that court decided whether document retention notices should be produced. *See id.* (citing *In re eBay Seller Antitrust Lit.,* 2007 WL 2852364 (N.D. Cal. Oct. 2, 2007)). As a result, the magistrate was not clearly erroneous in finding no concession on the issue by Oleksy.

Finally, the agreement between Oleksy's prior counsel and GE does not show that Oleksy conceded the litigation hold documents were privileged. The letter attached as an exhibit that purportedly supports GE's position states in relevant part that "I agreed that we would abide by the agreement previously reached between the parties whereby GE would not be required to

14

include documents generated after the initiation of this litigation on its privilege log." *See* Doc. 259, Ex. 14, ¶ 4. The Court does not see how this statement requires an inferential leap that Oleksy conceded litigation hold notices are privileged. This agreement is standard and designed to relieve the extreme burden that would arise if parties were required to log every e-mail or other written communication between the party and its attorney (or between the party's attorneys) that could technically be considered responsive to a document request. Therefore, it does not constitute a concession that litigation hold documents and document preservation policies are privileged. Therefore, the Court is not left with a definite and firm conviction that the magistrate was incorrect in compelling GE to produce its litigation hold documents because it failed to establish that they were privileged.

**B.     The Magistrate's Decision to Sanction GE for the Data Purge Is Not Contrary to Law**

In addition to granting the motion to compel because GE failed to establish that the litigation hold documents are privileged, the magistrate held that even if GE established the privilege, waiver of the privilege was an appropriate sanction for the spoliation resulting from the Shop Order Database data purge. In determining that a sanction was appropriate, the magistrate applied a three-prong test: (1) whether GE breached its duty to preserve or produce documents; (2) whether GE was at fault for the breach; and (3) whether Oleksy was prejudiced by the breach. The magistrate concluded the answer to each of these questions was yes and imposed the corresponding waiver sanction.

GE raises two objections to this finding. First, it contends the magistrate's decision was contrary to law because he sanctioned GE for the data purge without finding that GE acted with bad faith. Second, it contends the magistrate's finding of prejudice is clearly erroneous because GE recovered the lost data. Neither argument warrants reversal of the magistrate's order.

First, the Seventh Circuit has held that finding "bad faith" is not necessary for a Court to sanction a litigant for the spoliation of evidence. *See Marrocco v. General Motors Corp.,* 966 F.2d 220, 224 (7th 1992) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640 (1976)) ("Sanctions may be appropriate in any one of three instances – where the noncomplying party acted either with wilfulness, bad faith or fault. These three measures of culpability are each wholly distinct from one another."); *see also, e.g., Northington v. H&M International,* No. 08 C 6297, 2011 WL 663055, at *12-14 (N.D. Ill. Jan. 12, 2011) (sanctioning party for spoliation based on fault). Since it is indisputable that the data purge was GE's fault, it is difficult to see how the magistrate erred, much less made a decision that was contrary to law, in deciding that GE could be sanctioned.

GE attempts to distinguish *Marrocco* by arguing the case "does not even mention spoliation." Doc. 293 at 2. This distinction is unpersuasive. Spoliation occurs "when one party destroys evidence relevant to an issue in the case." *Smith v. United States,* 293 F.3d 984, 988 (7th Cir. 2002) (citing *Crabtree v. National Steel Corp.,* 261 F.3d 715, 721 (7th Cir. 2001)). In *Marrocco,* the plaintiffs sought damages for personal injuries one of them suffered when a multipiece truck rim separated. *See* 966 F.2d at 222. The side ring separated from the rim base, struck the plaintiff, causing him injuries. *Id.* During discovery, the defendant asked to inspect the side ring at issue. *Id.* The plaintiffs agreed. *Id.* However, the defendant then packed the side ring for shipping in a negligent manner. *Id.* It was lost during shipping and subsequently destroyed. *Id.* Therefore, while *Marrocco* may have never specifically used the term "spoliation," it is clear that the Seventh Circuit affirmed the district court's decision to sanction the defendant because the defendant was at fault for the spoliation of the side ring. *Marrocco*

controls and the magistrate's decision to impose a sanction for spoliation without finding bad faith is not contrary to law.

Second, GE argues that there is no prejudice because GE recovered the wage data that was purged from the Shop Order Database from another source. The parties dispute whether this is the same data; however, even if it is, the Court may not consider this evidence in determining whether the magistrate's decision was clearly erroneous because the information was never presented to the magistrate. When a district court reviews objections to a magistrate's decision on a nondispositive matter, such as a discovery dispute, it may not consider evidence that was not presented to the magistrate judge. *See Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3d Cir. 1992) (holding that a district court is not permitted to receive further evidence in reconsidering a ruling of a magistrate judge on a nondispositive matter); *see also, e.g., SmithKline Beecham Corp. v. Apotex Corp.,* No. 98 C 3952, 2000 WL 1310669, at *3 (N.D. Ill. Sept. 13, 2000) ("In reviewing a magistrate judge's nondispositive order for clear error, we may only properly consider the evidence that was before the magistrate judge at the time of the order. If we were to permit the introduction of new evidence at this stage, we would essentially be conducting an impermissible de novo review of the order.") (internal citations omitted); *Continental Bank, N.A. v. Premier Systems, Inc.,* No. 88 C 7703, 1989 WL 65045, at *1 (N.D. Ill. May 31, 1989) ("Considering new evidence upon appeal from a magistrate's nondispositive pretrial order would amount to impermissible de novo review of the order."); *State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C.,* 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) (The "Defendants have not cited any case, and the Court has not found one, in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge."). Since

the new wage data evidence was never presented to the magistrate judge, the Court cannot consider it in reviewing the magistrate's decision.

GE may consider this to be a harsh result because it did not discover that it had maintained the wage data at an alternative source until after the magistrate denied its motion for reconsideration in October 2011. If so, GE has no one to blame but itself. First, it is indisputable that it always possessed the alternative affidavit. Second, it discovered the alternative data as a result of preparing the affidavit that Judge Ashman proposed on July 26, 2011 during the motion to compel hearing. *See* Doc. 260, Ex. 5 at ¶ 19. Indeed, it appears it discovered the alternative data shortly after it began to gather and confirm the information necessary for the data. *Id.* However, despite agreeing to provide the affidavit on July 26, 2011, GE delayed taking any steps to prepare the affidavit until after the magistrate judge denied its motion for reconsideration on October 3, 2011. *Id.* at ¶¶ 18-19. Had it not, it would have discovered the data in sufficient time to present it to Judge Ashman during the briefing on the motion for reconsideration.[2] Since it failed to do so, this Court is constrained to considering what was presented to the magistrate.

GE also argues there was no prejudice because there are alternative ways to calculate damages and GE could recreate the data. The magistrate rejected this argument on the motion for reconsideration because GE never presented it until the motion for reconsideration. Doc. 203 at 9-10; *see also Woods v. Michigan City,* 940 F.2d 275, 280 (7th Cir. 1991) (holding that a motion for reconsideration is not designed to allow parties to raise legal theories or arguments that could have been raised in the original motion). Since GE did not present this argument until the motion for reconsideration, the Court cannot find the magistrate's decision to summarily

---

[2] A motion for reconsideration is designed to allow a party "to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir. 1985).

18

reject it to be contrary to law. Moreover, based on *Marrocco* and its progeny, GE should have been aware that prejudice is highly relevant in determining whether a sanction should be awarded for spoliation.

Finally, GE objects to the sanction order because its document preservation efforts were reasonable and it could not have foreseen that these documents would potentially be relevant to issues in the case. "The duty to preserve evidence includes any relevant evidence over which the nonpreserving entity had control and reasonably knew or could foresee was material to a potential legal action." *China Ocean Shipping (Group) Co. v. Simone Metals, Inc.,* No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999). The magistrate found that GE had a duty to preserve this information because: (1) Oleksy always asserted that his patent infringement damages were based on a theory of a reasonable royalty, which this evidence could be relevant for purposes of calculating; and (2) the information related to the operations at the Bangor plant, which is sufficiently related to the pending suit to warrant holding on to all such information. This decision is not clearly erroneous. Infringement of Oleksy's method at the Bangor plant has been at issue since the outset of the litigation. It should have been foreseeable to GE that any information related to the production of the turbine blades at the plant could be relevant to the suit and should have been preserved. Therefore, the magistrate's decision to impose the discovery sanction of waiver was not clearly erroneous and Oleksy's objections are overruled.

### D. The Motion to Vacate the Discovery Order

Since the Court overrules GE's objections to the magistrate's August 8, 2011 discovery order, there is no basis to vacate the order. The Court notes that even if GE recovered and produced the purged material, there would still not be a sufficient basis to vacate the order

because the magistrate judge also found the litigation hold documents were not privileged. Accordingly, this motion is denied.

## CONCLUSION

For the reasons set forth above, GE's motion to amend its final invalidity contentions is granted in part and denied in part. Oleksy's motion to strike the amended prior use affirmative defense is denied. GE's objections to Magistrate Judge Ashman's August 8, 2011 Order are overruled. GE's motion to vacate the order is denied. GE is directed to produce all the materials Judge Ashman ordered it to produce within fourteen days of the entry of this order.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 31, 2031