UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HENRYK OLEKSY,** | |
| Plaintiff | Case No. 1:06-CV-01245 |
| v. | Judge Virginia M. Kendall |
| **GENERAL ELECTRIC COMPANY** | Magistrate Judge Arlander Keys |
| Defendant | |

**PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS FOR GE'S FAILURE TO PRODUCE COMPLETE CODE SEQUENCES FROM GE SUBSIDIARIES**

Plaintiff Henryk Oleksy ("Oleksy") moves for sanctions for General Electric Company's ("GE") failure to produce complete commercial code sequences from its subsidiaries Preferred Machine and Tool Products Corporation ("Preferred"), Turbine Blading Limited ("TBL"), and GE Toshiba Turbine Components de Mexico S.R.L.de.C.V ("GTTC") (collectively, "GE Subsidiaries"). Besides GE's Bangor Facility, the subject of the spoliation hearing in December 2013, these three GE Subsidiaries also are part of the litigation. As such, complete commercial code sequences of GE's subsidiaries also are critical to Oleksy's analysis of infringement and determination of damages. Despite Oleksy's requests for complete code sequences dating back to September 2006, as well as this Court's December 19, 2012 Order that GE produce "all layers of the code or levels of the code or sequences of the code," GE has not produced a single complete sequence of code for any of these three subsidiaries.

Throughout this case GE has strung along Oleksy about production of code by GE Subsidiaries. GE repeatedly responded that it will "check … and let [Oleksy] know," "was not

1

aware [of the missing code]," "has already provided complete sequences," and finally, on December 16, 2013, GE remarked that GTTC and Preferred do "not create [the missing portion of the code] in ordinary course of business" and that GTTC "does not know how." Yet, GE has known, from Oleksy's 2006 discovery requests to, at the latest, the Court's December 19, 2012 Order, that infringement will be analyzed by the complete code sequences run on the CNC machines that perform the accused method. GE's failure to produce a complete sequence for a single product from GE Subsidiaries should result in severe sanctions, including Oleksy's fees for pursuing GE's dead-end leads and an inference or instruction that the missing code portions satisfy the trigonometric analysis claim element.

## I. FACTUAL BACKGROUND

GE does not dispute that the root section machining processes used by GE Subsidiaries are part of this litigation. (*See* Ex. A, GE's Supplemented Reponses to Oleksy's Interrogatories, dated May 30, 2013, at Interrog. No. 2; Ex. B, GE's Supplemented Reponses to Oleksy's Interrogatories, dated Dec. 16, 2013, at Interrog. No. 10; Ex. C, Transcript of Teleconference, dated May 21, 2013, at 3:19–4:4, 9:1–10:11; Ex. D, May 17, 2013 Letter from M. Addy to J. Saltiel; Ex. E, May 20 Letter from J. Saltiel to M. Addy.) While the parties have previously focused on GE's failure to provide complete code sequences for blades manufactured at GE's Bangor facility, GE has similarly failed to produce a complete code sequence for blades made at the GE Subsidiaries, despite repeated efforts by Oleksy to obtain that information, as detailed below:

    1.    <u>Preferred:</u> Oleksy invented his process at Preferred in the late 1990's while working at Preferred's Bedford Park, Illinois facility. (*See* DE 175 at 2.) GE obtained Preferred in 2000 and fired Oleksy shortly thereafter. Preferred employees

2

received the first GE Litigation Hold Notice in 2006. (Ex. F, Amended Declaration of Anthony Walsh, at ¶ 12; *see also* Ex. G, Pls. 1st Set of Requests for Prod., dated Sept. 7, 2006, at Nos. 1–3 (requesting documents related to code regarding GE's Machining Methods and machining instructions.) In response to the Court's December 19, 2012 Order, GE produced incomplete code sequences from Preferred on January 11, 2013 and also provided a 30(b)(6) witness to discuss the code portions. (*See* Ex. H, Jan. 15, Letter from J. Saltiel to S. Szczepanski; Ex. I, Jan. 10, 2013 Letter from J. Saltiel to S. Szczepanksi.) Oleksy first requested that GE produce complete code sequences, rather than incomplete code portions from Preferred on May 8, 2013. (Ex. J, Email from S. Szczepanski to J. Saltiel.)

   2. <u>GTTC</u>: GE produces turbine blades at a facility in Monterrey, Mexico that is joint venture between GE and Toshiba, called GTTC; GTTC employees received the 2006 Litigation Hold Notice. (Ex. F, Amended Declaration of Anthony Walsh, at ¶ 12.) In response to the Court's December 19, 2012 Order, GE produced incomplete code sequences from GTTC on January 11, 2013 and also provided a 30(b)(6) witness to discuss the code portions. (*See* Ex. H, Jan. 15, Letter from J. Saltiel to S. Szczepanski; Ex. K, Feb. 13, 2013 Email chain between J. Saltiel to S. Szczepanksi.) Oleksy specifically requested that GE provide complete code sequences from GTTC on at least February 22, 2013. (Ex. L, Feb. 22, 2013, Email from S. Szczepanski to J. Saltiel.)

   3. <u>TBL</u>: GE also produces turbine blades at a facility located in Shipston-on-Stour, England, which is owned by GE's subsidiary, TBL. After the December 19, 2012 hearing, GE produced portions of code from TBL on February 22, 2013 and also provided a 30(b)(6) witness to discuss the code portions. (*See* Ex. L, Feb. 22, 2013 Email

from S. Szczepanski to J. Saltiel; Ex. K, Feb. 13, 2013 Email chain between J. Saltiel to S. Szczepanksi.) Oleksy first specifically requested complete code sequences from TBL on February 26, 2013. (Ex. M, Feb. 26, 2013 Email from S. Szczpanksi to J. Saltiel.)

The parties agree about what constitutes complete code sequences; they include at least root section drawings, g-code, and CL data.[1] (*See* DE 377 at 5–7; *see also* Ex., N, Transcript of Dec. 9, 2013 Hearing - Direct Testimony of Andrew King, at 143:3–144:5, 150:5–13, 155:12–25.) Moreover, even though it is GE's code, because GE initially failed to understand what a complete sequence entailed, (see Ex. O, May 15, 2013 Email from J. Saltiel to S. Szczepanski), Oleksy has repeatedly outlined for GE what code parts make up complete code sequences for Preferred, TBL, and GTTC.[2] (*See, e.g.*, Ex. P, Oct. 2, 2013 Letter from B. Helms to A. Halsey; Ex. Q, Oct. 22, 2013 Letter from B. Helms to A. Halsey; Ex. R, Dec. 11, 2013 Letter from M. Addy to M. Butler.) Indeed, it is incongruous that, after the December 19, 2012 Court Order specifying production of "all layers of the code or levels of the code or sequences of the code," (Ex. S, Dec. 19, 2012 Hearing Tr. at 54:10–12), Oleksy has been forced to provide such specifics to GE about GE Subsidiaries' code.

After numerous letters and meet and confers, including conferences with GE engineers on May 21, 23, and 24, 2013, GE asserted on October 30, 2013 and November 20, 2013 that it

---

[1] A complete sequence is comprised of the code used for a specific run during the manufacture of one specific part, not an amalgamation of different portions of the code used to manufacture different parts or used for different runs or on different machines.

[2] Though GE produced samples of code from TBL and Preferred for this litigation, the samples are not complete. Specifically, the CL data files GE produced do not correspond to the g-code that GE produced for those sequences, i.e., the CL data files are not from the same manufacturing run as the g-code. Having complete sequences with matching CL data files and g-code is critical to evaluating whether the GE Subsidiaries' methods are performing the claimed trigonometric analysis—i.e., complete sequences are critical to evaluating infringement.

4

does not save at least parts of the code. (Ex. T, Oct. 30, 2013 Letter from A. Halsey to B. Helms; Ex. U, Nov. 20, 2013 Letter from M. Butler to M. Addy.) However, even then, GE indicated that its software is capable of generating the parts of the sequences that Oleksy has requested. (*See* Ex. T, Oct. 30, 2013 Letter from A. Halsey to B. Helms; Ex. U, Nov. 20, 2013 Letter from M. Butler to M. Addy.) Nonetheless, GE still has not provided any complete sequences from the GE Subsidiaries. (Ex. R, Dec. 11, 2013 Letter from M. Addy to M. Butler.) In fact, GE has taken no steps to preserve or produce complete code sequences, instead, responding to Oleksy with further delay tactics, either telling Oleksy GE would "let [Oleksy] know" or that GE already had produced complete code sequences. The following correspondence, among numerous others, illustrates GE's responses to Oleksy's repeated attempts to acquire a complete code sequence from each of the subsidiaries:

- Responding to Oleksy's request for missing parts of GTTC code: GE claimed it would "check . . . and let [Oleksy] know" (Ex. V, Feb. 22, 2013 email string between J. Saltiel and S. Szczepanski);

- Responding to Oleksy about missing code portions from Preferred and GTTC: GE claimed it was "not aware of these items in addition to what GE already produced" (Ex. W, May 16, 2013 letter from J. Saltiel to S. Szczepanski; *see also* Ex. X, May 15, 2013 letter from S. Szczepanski and J. Saltiel);

- Responding to Oleksy's request for complete sequences from the subsidiaries: GE stated "GE has already produced complete sequences" (Ex. Y, May 21, 2013 email string between J. Saltiel and S. Szczepanski); and

- Responding to Oleksy's follow-up about GE's production of missing code: GE stated, "the documents . . . were, in fact produced at that time" (Ex. Z, July 16, 2013 email from J. Saltiel to S. Szczepanski.)

- Responding again to Oleksy's request for complete sequences: GE averred, "representative samples of code from each facility were produced" (Ex. AA, Oct. 8, 2013 letter from A. Halsey to B. Helms; *see also* Ex. P, Oct. 2, 2013 letter from B. Helms to A. Halsey.)

Each of GE's representations that it had produced a complete code sequence for the GE Subsidiaries was wrong. The table below, which was provided to GE on December 11, 2013, demonstrates that GE has never produced a single complete code sequence for any of the GE Subsidiaries:

| | **TBL** | | | |
|---|---|---|---|---|
| | 8133 (Litigation) | | | |
| AVI | YES | | | |
| Drawing | YES | | | |
| Tool | YES | | | |
| Post Processors | YES | | | |
| CL Data | Starts with tool # 1 (native) | Starts with tool # 1 (pdf) | Starts with tool # 10 (native) | Starts with tool # 10 (pdf) |
| g-code for tool | Starts with tool # 11 (native) | Starts with tool # 11(pdf) | | |
| | 8373 | | | |
| AVI | YES | | | |
| Drawing | NO | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data for tool | Starts with tool #2 (pdf) | Starts with tool #10 (pdf) | | |
| g-code | NO | | | |
| | 8090 | | | |
| AVI | YES | | | |
| Drawing | NO | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data | Starts with tool # 1 (pdf) | Starts with tool # 53 (pdf) | | |
| g-code for tool | NO | | | |
| | **Preferred** | | | |
| | 269B4675 (Litigation) | | | |
| Drawing | YES | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data | Starts with tool # 10 (native) | Starts with tool # 10 (pdf) | | |
| g-code for tool | Starts with tool # 10 (native) | Starts with tool # 10 (pdf) | Starts with tool # 15 (native) | Starts with tool # 15 (pdf) |
| | 103T9911 | | | |
| Drawing | YES | | | |
| Tool | YES | | | |
| Post Processors | YES | | | |
| CL Data | NO | | | |
| g-code for tool | Starts with tool #10 | | | |
| | **GTTC** | | | |
| | 141E4191 (OKUMA) | | | |
| Drawing | YES | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data | NO | | | |
| g-code for tool | Starts with tool # 4 (native) | Starts with tool # 4 (pdf) | | |
| | 141E4102 (Mazak) | | | |
| Drawing | YES | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data | NO | | | |
| g-code for tool | Starts with tool # 4 (pdf) | Starts with tool # 4 (native) | | |
| | 141E4102 (Okuma) | | | |
| Drawing | YES | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data | NO | | | |
| g-code for tool | Starts with tool # 34 (native) | Starts with tool # 34 (pdf) | | |
| | 141E4191 (Mazak) | | | |
| Drawing | YES | | | |
| Tool | NO | | | |
| Post Processors | YES | | | |
| CL Data | NO | | | |
| g-code for tool | Starts with tool # 4 (pdf) | Starts with tool # 4 (native) | | |

Case: 1:06-cv-01245 Document #: 466 Filed: 01/03/14 Page 7 of 14 PageID #:10915

(Ex. R, Dec. 11, 2013 Letter from M. Addy to M. Butler.) Thus, at most, GE has produced scattered code segments that were never used together to make a single batch. As Oleksy has repeatedly explained to GE, however, Oleksy needs to have all the code segments for a single batch in order to determine the process used. For example, GE purported to produce sequences for each step in the process for TBL 8133 (the first example above), but in fact provided CL Data for a different batch (which used Tool #1) than the G-code provided (which used Tool #11). As a result, Oleksy cannot compare the CL Data with the G-code for TBL 8133.[3]

It was only after Oleksy highlighted the gaps in GE's production that GE finally revealed that it had not preserved evidence from the GE Subsidiaries. (*See, e.g.*, Ex. BB, Dec. 16, 2013 Letter from M. Butler to M. Addy.) GE's failure to take even basic steps to preserve and produce complete code sequences during the past year for TBL and during the past six years for GTTC and Preferred ignores the Court's order and GE's basic discovery obligations, resulting in Rule 37 violations and bad faith spoliation.

## II. LEGAL STANDARD

A party has an obligation to preserve information that it does not maintain in the ordinary course of business once it learns that it is relevant. *Arista Records, LLC v. USENET.com,* 608 F. Supp. 2d 409, 431 (S.D.N.Y. 2009) ("once the Defendants had actual notice that Plaintiffs were requesting the data [not saved in the ordinary course of business], Defendants had an obligation to preserve it, if possible, or to at least negotiation in good faith what data they could

---

[3] CL data stands for cutter location data and refers to the position and orientation of a cutting tool with respect to a coordinate system in 3-D space. (Ex. CC, Declaration of K. Hanson, dated Jan. 3, 2013, at ¶ 3.) Trigonometric analysis occurs when CL data is transformed into g-code. (Ex. DD, Plfs. Second Supp. Objs. and Resps. to GE's Interrog. No. 1, at 3.) Therefore, both CL data and g-code are needed from the same run (i.e., code from the manufacture of the same part) to establish trigonometric analysis. Trigonometric analysis is a limitation required by all claims of the Oleksy Patent. (Ex. EE, U.S. Patent No. 6,449,529 at col. 6, l. 28–col. 8, l: 4.)

produce.")). If preservation is unduly burdensome, the party must move for a protective order. *Arista*, 608 F. Supp. 2d at 431.

The court may find spoliation "when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). "Bad faith" spoliation occurs when a party's conduct is either "intentional or in reckless disregard of a party's obligations to comply with a court order" or discovery obligations. *Rosenthal*, 2011 WL 722467, at *7. "Consistent disregard for the rules of discovery and court orders meets the Seventh Circuit's requirements for bad faith." *Id*. Bad faith spoliation supports the imposition of severe sanctions, including adverse inference instructions or default judgment. *Philips Elec. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1213–14 (D. Utah 2011); *Top Tobacco*, 2012 WL 4490473, at *2–3.

Rule 37 violations, which occur, among other things, when a party violates a court order, support severe sanctions, including default judgment or adverse inference instructions. *See* Fed. R. Civ. P. 37(b); *see also generally* DE 451. This Court may sanction a party pursuant to its inherent power to take measures to prevent abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980); *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2010) ("In general, courts may impose appropriate sanctions, including dismissal or default, against litigants who violate discovery rules and other rules and orders designed to enable judges to control their dockets and manage the flow of litigation) (citing cases); *Peerless Indus. Inc. v. Crimson AV, LLC*, No. 1:11-cv-1768, 2012 WL 2502715, at *3 (N.D. Ill. June 27, 2012) (granting motion for sanctions when non-moving party produced incomplete discovery after (1) a party agreed in court to produce documents and (2) at a later hearing was compelled by the court to produce the documents); *Peerless Indus. Inc. v. Crimson AV, LLC*, No. 1:11-cv-1768, 2013 WL 85378, at

9

*3–4 (N.D. Ill. Jan. 8, 2013) (granting motion to for sanctions where a party did not comply with a court order to identify and produce documents).

A district court may also impose sanctions for spoliation under its inherent power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Quela v. Payco-General Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681, at *6–7 (N.D. Ill. May 18, 2000); *Krumwiede v. Brighton Assocs., LLC*, No. 05 C 3003, 2006 WL 1308629, at *9 (N.D. Ill. May 8, 2006).

### III. GE'S FAILURE TO PRODUCE COMPLETE SEQUENCES FOR PREFERRED, TBL, AND GTTC PREVENTS OLEKSY FROM ANALYZING INFRINGEMENT

The results of GE's refusal to comply with the Court order and subsequent spoliation go to the heart of the merits of this patent infringement case. Oleksy must review the complete code sequences in order to determine infringement by GE's subsidiaries. GE knows the code is at the heart of the infringement analysis from both court filings (see e.g., DE 343 at 6–7) and Orders. (Ex. S, Dec. 19, 2012 Hearing Tr. at 54:10–12.) Most notably, GE has not produced the specifically requested CL data files for most code sequences, despite admitting that it is capable of doing so. (*See* Ex. T. Oct. 30, 2013 Letter from A. Halsey to B. Helms; Ex. U, Nov. 20, 2013 Letter from M. Butler to M. Addy; *see also* Ex. R, Dec. 11, 2013 Letter from M. Addy to M. Butler.) The missing CL data must be compared with the g-code from the same part run to establish the use of trigonometric analysis required by all the claims.

Despite the Court order; the numerous communications between counsel, technical personnel of GE and its subsidiaries, and Oleksy's expert; and the passage of over a year, GE protests that matching CL data files for the sequences were not produced because TBL, Preferred, and GTTC do not generate CL files "in the ordinary course of business," and further

that GTTC "does not know how to generate a CL file at all."[4] (Ex. BB, Dec. 16, 2013 Letter from Marla Butler to Meredith Martin Addy.)

Yet, GE's recent story that it cannot generate CL data, besides being different from its positions earlier in 2013, contradicts the fundamental operation of commercial CAM packages used by GE's subsidiaries. For example, GTTC uses a CAD/CAM package called MASTERCAM, Preferred uses a CAD/CAM package called SURFCAM, and TBL uses a CAD/CAM package called UNIGRAPHICS. (Ex. CC, Declaration of K. Hanson, dated Jan. 3, 2013, at ¶¶ 4, 7.) In basic operation, these software CAD/CAM packages always create CL data. (*Id*. at ¶ 8.) A CL data text file can be created from CL data and this file can be saved on an electronic medium and/or printed. (*Id.* at ¶¶ 9–10.)

From the time Oleksy filed his complaint on March 8, 2006 through December 19, 2012, GE acted in bad faith by not preserving code for Preferred and GTTC and particularly since employees for Preferred and GTTC received the 2006 Hold Notice and thus should have preserved code. (Ex. FF, 2006 Hold Notice (GE0981309–13); Ex. P, Dec. 9, 2013 Hearing Transcript, at 15:14–16:8); *see also Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 WL 722467, at *7 (N.D. Ill. Feb. 23, 2011). In addition, GE's failures to produce code for Preferred, GTTC, and TBL since the Court's December 19, 2012 Order, which specifically ordered production of complete code sequences, constitute Rule 37 violations. *See* Fed. R. Civ. P. 37(b); *Chambers*, 501 U.S. 44-45. Therefore, because GE has not produced matching g-code and CL data files for any of its three subsidiaries for the entire period of the

---

[4] GE maintains that GTTC lacks the knowledge to generate CL data files; however, GE does not and cannot assert that GTTC's CAD/CAM program does not generate CL data (data itself as opposed to data files), (*see* Ex. CC, Hanson Decl. at ¶ 10), and GE does not assert that it lacks the knowledge to generate CL data at the GTTC facility.

litigation, the Court may infer that those portions of the code meet the trigonometric analysis limitation required by all claims of the Oleksy patent:

> the surfaces of the work piece being defined by a plurality of programmed instructions for said computer numerical control milling machine obtained by trigonometric analysis of required curvatures of the surfaces and movements of said spinning form cutter and said rotary table….

(Ex. EE, U.S. Patent No. 6,449,529 at col. 6, ll. 34–39); *Top Tobacco*, 2012 WL 4490473, at *3 (recommending that at trial, the district court instruct the jury that it may draw a negative or adverse inference based on the spoliation).

## IV. GE'S FAILURE TO TO PRODUCE COMPLETE SEQUENCES FOR PREFERRED, TBL, AND GTTC HAMPERS OLEKSY'S ABILITY TO PROVE DAMAGES

Similar to GE's actions for Bangor, GE has failed to provide g-code for all of the dovetails that GTTC, Preferred, and TBL has manufactured. (*See* DE 451 at 3; DE 452 at ¶¶ 44–46; *see also* Chart reproduced on page 7.) And similar to GE's actions for Bangor (see id.), GE has provided spreadsheets of the number of blades manufactured by GTTC and Preferred. (*See* Ex. GG, GE0572450–59; Ex. HH, GE0574445; Ex. II, GE0019675–76.) These spreadsheets, however, provide no support to corroborate how each blade was manufactured (e.g., manually or by the accused methods). Hence, the only way for Oleksy to know for certain how many dovetails the GE Subsidiaries manufactured during the relevant time period using the accused methods is to review the g-code for each batch of dovetails manufactured. (Ex. N, Transcript of Dec. 9, 2013 Hearing – Cross of M. Fournier, at 241:3–12 ("if I wanted to know [if a specific dovetail was manufactured using the numerical control process], I would probably attempt to see . . . if an NC file existed for that particular part.") Because GE has not done so, and cannot do so, Oleksy's ability to compute an accurate damages total is hindered.

## V.  CONCLUSION

For reasons stated above, Plaintiff respectfully requests an Order: (1) allowing the inference or instruction that GE has destroyed relevant evidence, which would have established that GE's subsidiaries methods satisfy the "trigonometric analysis" limitation of Claim 1; (2) allowing the inference or instruction that all dovetails manufactured by GTTC, Preferred, and TBL were done by the accused methods; and (3) imposing additional sanctions commensurate with the harm caused by GE's continued gamesmanship and failure to produce complete code sequences, including attorney fees.

Dated:  January 3, 2014

Respectfully submitted,

/s/  Randal S. Alexander
Christopher Niewoehner
Meredith Martin Addy
Thomas G. Pasternak
Slawomir (Steve) Z. Szczepanski
Brandon C. Helms
Randal S. Alexander
Steptoe & Johnson LLP
115 South LaSalle Street
Suite 3100
Chicago, IL  60603
Telephone: (312) 577-1300
cniewoehner@steptoe.com
maddy@steptoe.com
tpasternak@steptoe.com
sszczepanski@steptoe.com
bhelms@steptoe.com
ralexander@steptoe.com

***Attorneys for Plaintiff,
Henryk Oleksy***

## CERTIFICATE OF SERVICE

I am an attorney and hereby certify that on January 3, 2014, I electronically filed the foregoing **PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS FOR GE'S FAILURE TO PRODUCE COMPLETE CODE SEQUENCES FROM GE SUBSIDIARIES** with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                                   */s/ Randal S. Alexander*
                                                  Randal S. Alexander